THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RENEE KERGER, Defendant-Appellant.

Second District   No. 2—88—1087

Opinion filed December 1, 1989.

McLAREN, J., dissenting.

William F. Linkul, of Glen Ellyn, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Michael L. Shevick, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Renee Kerger, was charged by indictment in the circuit court of Du Page County with failure to report an accident involving death or personal injury. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b).) Following a bench trial, defendant was found guilty and was sentenced to a one-year term of conditional discharge and a $400 fine.

On appeal, defendant raises two issues: (1) whether the evidence establishes beyond a reasonable doubt that defendant was "involved" in a motor vehicle accident within the meaning of section 11–401 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11–401); and (2) whether, if defendant was involved in a motor vehicle accident, she complied with sections 11–401(b) and 11–403 of the Code.

The following relevant facts were adduced at defendant's bench trial. On September 27, 1987, at approximately 11:30 p.m., defendant was driving east on Lake Street in Addison, Illinois. In the passenger seat was her boyfriend, Tim Jones. Defendant was followed by a friend, Richard Barsanti, who was approximately one car length behind defendant's vehicle. Defendant, Jones, and Barsanti had previously been at a wedding reception. Barsanti was following defendant to Hillside, Illinois. Immediately behind Barsanti's vehicle was a third vehicle with five occupants, one of whom was Lisa DeNittis, who was seated in the left rear passenger seat, and another was Rosemary Tucker, who was seated in the middle rear passenger seat.

Lake Street is a four-lane road at the location of the accident with two lanes in each direction. There is some street lighting along Lake Street at this location. Although there is some discrepancy between several witnesses as to whether the three vehicles were in the inside lane or the curb lane as they proceeded east on Lake Street, it is clear that the Barsanti vehicle was immediately behind defendant's vehicle and followed closely by the vehicle containing DeNittis and Tucker.

While the various witnesses disagree as to certain details, the collective testimony establishes that a pedestrian attempted to cross Lake Street from north to south. Both DeNittis and Tucker testified that as the pedestrian attempted to cross the eastbound lanes of Lake Street, he was struck by the left side of defendant's vehicle, appeared to tumble or fall, and was hit head on by Barsanti's vehicle. The pedestrian, Richard Herman, died as a result of the injuries sustained in this incident.

Defendant testified that as she was driving east on Lake Street, she observed the pedestrian crossing Lake Street toward her vehicle. Defendant was forced to swerve sharply to the right to avoid hitting the pedestrian, and as she swerved, she heard a "thump" toward the rear of her vehicle. She immediately pulled over to the curb and stopped. She stated that she did not know if the pedestrian came in contact with her vehicle.

Jones, who had been sleeping, exited defendant's vehicle and went

back to Barsanti's vehicle. Defendant also exited her vehicle and walked around it to see if it had sustained any damage, which, according to defendant, it had not. She then sat in the front passenger seat previously occupied by Jones.

The vehicle in which DeNittis and Tucker were passengers also pulled over and stopped. Rosemary Tucker testified that she went up to defendant, who was standing beside the passenger door of her vehicle, and observed defendant to be upset, crying, and hysterical. According to Tucker, defendant said "[M]y God, I hit him; I can't believe I hit him."

Although defendant's and Jones' testimony differs somewhat as to the subsequent events, it appears that defendant remained on or near the scene of the accident for between 45 minutes and two hours. Defendant apparently sat on a nearby porch for part of that time, and eventually Jones returned to her and told her to get into her vehicle, and he drove her home.

The evidence establishes that there were five or six police officers at the scene from time to time while defendant and Jones were present. Defendant did not talk to any police officers at the scene, nor did she contact the police within three hours after the accident. Jones testified that he attempted to approach the Barsanti vehicle and inquire as to Barsanti's whereabouts and was told to "get out of here" by a police officer.

Sometime after driving defendant home, Jones went to the Addison police department, where he eventually gave a written statement to the police indicating that he had been driving defendant's vehicle at the time of the accident. Jones admitted at trial that he falsified the statement to police as to who was driving defendant's vehicle.

In finding defendant guilty, the court found that defendant did not actually contact the pedestrian with her vehicle. The court further ruled that contact was unnecessary to constitute involvement in an accident and that based on the other evidence defendant was involved in an accident within the meaning of section 11–401 of the Code.

Defendant contends that because there was no physical contact between her vehicle and the pedestrian nor "substantial implication or connection" between her vehicle and the pedestrian who was run over by another vehicle, she was not "involved" in a motor vehicle accident and had no responsibilities under sections 11–401 and 11–403 of the Code. As defendant notes, the Code does not define the term "involved." Section 11–401 of the Code provides in pertinent part:

"(a) The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person

shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11—403 have been fulfilled." Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(a).

■ In construing a statute, the court must discover the intent of the legislature in order to give it effect. (*People v. Parker* (1988), 123 Ill. 2d 204, 209, 526 N.E.2d 135.) To do so, the court must consider the language of the statute, the purpose of the legislation, and the reason for its enactment. (*People v. Haywood* (1987), 118 Ill. 2d 263, 271, 515 N.E.2d 45.) Although criminal statutes must be strictly construed in favor of the defendant and may not be extended in their application to cases which do not, by the strictest construction, come under their provisions (*People v. Parvin* (1988), 125 Ill. 2d 519, 525, 533 N.E.2d 813, 815), they must not be so rigidly construed as to defeat the intent of the legislature. *Haywood*, 118 Ill. 2d at 271, 515 N.E.2d at 49.

■ ■ Neither party cites, nor do we find, any Illinois case interpreting the meaning of "involved in a motor vehicle accident." We begin, therefore, by noting that the purpose of the statute is to inform those who have been injured or damaged by another driver or the proper authorities if necessary of that driver's identity. (*People v. Young* (1982), 92 Ill. 2d 236, 240, 441 N.E.2d 641; *People v. Lucus* (1968), 41 Ill. 2d 370, 373, 243 N.E.2d 228.) In serving this purpose, the statute requires the driver of a vehicle involved in a motor vehicle accident to comply with the reporting requirements of section 11—403. We do not agree with defendant's narrow interpretation that the language requires that there be actual contact before a driver will be considered to have been involved in a motor vehicle accident. We can readily identify numerous situations where the driver of a motor vehicle would be involved in a motor vehicle accident and yet not have contact with another vehicle or pedestrian. Such a narrow interpretation as urged by defendant would defeat the purpose of the statute in many situations where the statute's purpose should otherwise be served.

In opinion No. S—1430 of the Illinois Attorney General (1979 Ill. Att'y Gen. Op. 57), the question addressed was whether there must be actual physical contact between vehicles before a driver is deemed to be "involved" pursuant to section 11—403. The example cited in the request for an opinion was where the first driver commits a driving error and the second driver reacts in a manner which avoids a collision with the first driver but still results in injury or damage to the

second driver. It was asked whether the first driver is "involved" in an accident. The Attorney General stated that there does not have to be actual physical contact between the vehicles before a driver is deemed to be "involved." The words "involved in an accident" within the statute were construed by the Attorney General to mean "implicated in an accident or connected with the accident in a substantial manner." (1979 Ill. Att'y Gen. Op. at 59.) The Attorney General further concluded that, in the example cited, the first driver would be "involved," but each case would depend upon its own facts.

Although an opinion of the Attorney General is not binding on this court, a well-reasoned opinion of the Attorney General is entitled to considerable weight in resolving a question of first impression in this State regarding the construction of an Illinois statute. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 130-31, 384 N.E.2d 310.) In this instance, the opinion of the Attorney General supports our conclusion that there need not be physical contact between a vehicle and, in this case, a pedestrian before a driver is deemed to be "involved in a motor vehicle accident."

■ While we recognize that a variety of factual situations might arise absent any contact, some of which might not require a driver to comply with section 11—403, we need only concern ourselves with the facts of this case. Any future cases requiring interpretation of this language must necessarily depend upon the particular facts of the case in light of the purpose behind the statute. To hold otherwise would allow drivers of automobiles who do not come in contact with a pedestrian or another vehicle or who are otherwise arguably involved in a motor vehicle accident to escape detection and effectively circumvent the purpose behind the statute.

Here, the evidence establishes that defendant observed the pedestrian walking across the roadway toward her vehicle. She swerved sharply to the right and heard a "thump" near the rear of her vehicle as she did so. While the trial court found that defendant's vehicle did not contact the pedestrian, a finding not challenged on appeal, the two witnesses, DeNittis and Tucker, testified that the pedestrian was struck by defendant's vehicle. At the very least, this testimony establishes that defendant's vehicle came very close to the pedestrian. The pedestrian then either stumbled or fell, and Barsanti's vehicle struck him immediately thereafter. Additionally, defendant stated to Tucker after the accident that she hit the pedestrian. Under these circumstances, we conclude that defendant was "involved in a motor vehicle accident."

We emphasize that it is not necessary to determine, for purposes

of deciding whether defendant was involved in a motor vehicle accident, whether defendant caused or was at fault for the accident as further urged by defendant. Such an inquiry is one for the police and the courts to undertake at a later time. This inquiry will of course be better undertaken if those who are involved in a motor vehicle accident are required to come forward and identify themselves so that the police may properly investigate the accident.

Of course, to show a violation of section 11—401 the prosecution is required to prove that the accused had knowledge that the vehicle he was driving was involved in an accident or collision. (*People v. Nunn* (1979), 77 Ill. 2d 243, 252, 396 N.E.2d 27.) That issue is not presented in this appeal.

■ We next address defendant's contention that she substantially complied with the requirements of sections 11—401 and 11—403. Section 11—401(b) requires that any driver "who has failed to stop or to comply with" the requirements of section 11—403 "shall, within 3 hours after such motor vehicle accident *** report the place of the accident, the date, the approximate time, the driver's name and address, the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such accident occurred." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b).) Section 11—401(a) requires the driver of a vehicle involved in a motor vehicle accident to stop and "remain at the scene of the accident until the requirements of Section 11—403 have been fulfilled." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(a).) Consequently, to avoid prosecution under 11—401(b), a driver involved in a motor vehicle accident must either comply with the requirements under 11—403 or comply with the requirements of 11—401(b). The evidence in this case establishes that defendant did neither.

Section 11—403 states in pertinent part:

"§11—403. Duty to give information and render aid. The driver of any vehicle involved in a motor vehicle accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give the driver's name, address, registration number and owner of the vehicle the driver is operating and shall upon request and if available exhibit such driver's license to the person struck or the driver or occupant of or person attending any vehicle collided with ***.

If none of the persons entitled to information pursuant to this Section is in condition to receive and understand such information and no police officer is present, such driver after

rendering reasonable assistance shall forthwith report such motor vehicle accident at the nearest office of a duly authorized police authority, disclosing the information required by this Section." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—403.)

While it is undisputed that defendant stopped and remained at the scene of the accident for at least 45 minutes, it is equally clear that she did not provide nor attempt to provide the information required by section 11—403. While the person entitled to the information was in no condition to receive and understand it, there were at least five police officers present, any one of whom could have received the required information had defendant attempted to do so in conformance with section 11—403.

Furthermore, defendant did not, after leaving the scene without complying with the requirements of section 11—403, provide the required information within three hours under section 11—401(b). We are not persuaded by defendant's argument that she was excused from compliance because she knew that her boyfriend, Tim Jones, went to the Addison police department, particularly where there is no evidence that he went there to provide the required information and, in fact, provided false information. The evidence establishes beyond a reasonable doubt that defendant failed to comply with section 11—401(b).

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DUNN, J., concurs.

JUSTICE McLAREN, dissenting:

Because I believe the majority opinion has interpreted section 11—401 too broadly, I must respectfully dissent. I agree with the majority that contact need not be made in order to be involved in an auto accident under section 11—401. However, I believe the interpretation given by the majority makes liable not only people who are "involved" in an accident but also people who are not "involved" in the accident but who are material witnesses.

There are sufficient facts in this case to support a finding that contact was made between the defendant's vehicle and the deceased. However, since the trial court found that there was no contact between the defendant's vehicle and the deceased, I believe the remaining facts presented by all the witnesses clearly establish that the car in which the plaintiff was driving was not the proximate cause nor a

proximate cause of the accident which took the life of the pedestrian. Thus, the defendant is, at best, a material witness who is not involved in the auto accident. The court committed error when it found beyond a reasonable doubt that the defendant was "involved" in the accident.

Both defendant and the State argue that the reasoning of one of the cases cited by the Attorney General, *People v. Bammes* (1968), 265 Cal. App. 2d 626, 71 Cal. Rptr. 415, should apply to the instant case. In *Bammes*, the defendant's car turned into the path of a station wagon. To avoid hitting the defendant's car, the station wagon swerved to the left into the path of an oncoming truck. The station wagon and the truck collided head on. The station wagon was demolished and five of its occupants killed. The defendant saw the crash in her rearview mirror, but continued driving. Based on these facts, the California appellate court reasoned that the defendant's action of turning in front of the oncoming station wagon "was an efficient cause of the latter's colliding with the truck and that therefore defendant was 'involved' in the accident." (*Bammes*, 265 Cal. App. 2d at 631, 71 Cal. Rptr. at 418.) The court noted that even if the "real *cause*" of the accident had been the station wagon driver's error in attempting to pass instead of sharply braking, "nevertheless defendant was *involved* in the accident because it was her pulling out into the intersection in front of the oncoming station wagon which precipitated the necessity for some immediate action" by the driver of the station wagon. (Emphasis in original.) (*Bammes*, 265 Cal. App. 2d at 631, 71 Cal. Rptr. at 419.) The court concluded that one may be involved in an accident, yet not be at fault. (*Bammes*, 265 Cal. App. 2d at 632, 71 Cal. Rptr. at 419.) The *Bammes* definition of "involved" is that the driver precipitated or caused the vehicle or pedestrian to come into contact with something, even if the driver was not at fault. (*Bammes*, 265 Cal. App. 2d at 632, 71 Cal. Rptr. at 419.) The majority's interpretation is in conflict with the rule that penal statutes should be strictly construed in favor of defendant. To define "involved" as covering a driver who was not responsible for an accident nor made contact with anything would impermissibly extend the statute to a situation which by strict construction, does not come under its provisions. One purpose of this statute in question is to facilitate victims or their families in identifying and seeking redress from tortious drivers. This interpretation is not furthered by the majority's interpretation punishing material witnesses who did not precipitate or cause an accident.

If a driver's car has collided with something or someone, or another car has collided with that of the driver, a reasonable person

would know that he or she had been involved in an accident. However, if there is no contact such as the trial court found in this case, there must be something which would indicate to a reasonable person that he or she had been involved in an accident. Under *Bammes*, when there is no contact between a person or car and the defendant's car, defendant is "involved" in the accident if he or she did something to cause or precipitate the accident. The trial court based its decision on the fact that the defendant believed she hit the pedestrian. However, her subjective belief is irrelevant, because if the evidence showed that the defendant was not involved in the accident, her belief that she was does not establish her involvement. If a defendant did not commit an offense, he cannot be convicted, even if he believed that he committed the offense.

The majority has stated, "We emphasize that it is not necessary to determine, for purposes of deciding whether defendant was involved in a motor vehicle accident, whether defendant caused or was at fault for the accident as further urged by defendant. Such an inquiry is one for the police and the courts to undertake at a later time. This inquiry will of course be better undertaken if those who are involved in a motor vehicle accident are required to come forward and identify themselves so that the police may properly investigate the accident." (191 Ill. App. 3d at 410-11.) Such a declaration by the majority is tantamount to a statement that if one witnesses an accident one better stop and report and let the courts and the police at some other point in time determine whether or not one is "involved" in the accident regardless of cause or fault. Such an interpretation is overly broad and goes far beyond the intent of the legislature as it makes material witnesses, not parties who may or may not be subject to liability, subject to punishment for a felony. I believe the intent of the legislature was that any individual who drove a motor vehicle and who may have been the proximate cause or a proximate cause, or who made contact with any other vehicle, person, or other instrumentality which was involved in the auto accident is required to stop and give information as required under sections 11—401(b) and 11—403 of the Code.

Since I have determined that the defendant was not involved in the auto accident, I have not not addressed the aspect of the opinion relating to whether compliance with sections 11—401(b) and 11—403 was effectuated.

Based upon the above, I respectfully dissent.