2015 IL App (2d) 130581
No. 2-13-0581
Opinion filed June 17, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-1175 |
| MICHAEL MORENO, | ) ) ) | Honorable George J. Bakalis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Zenoff and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant, Michael Moreno, was convicted of aggravated driving under the influence (DUI) resulting in a death, aggravated failure to report an accident resulting in a death, and disorderly conduct.  His appeal challenges his conviction of aggravated failure to report an accident resulting in a death, a Class 1 felony, based on his failure to report the accident within 30 minutes after leaving the scene.  He contends that the evidence was insufficient to prove the offense, because he was "physically unable" to report the accident at a police station within 30 minutes.  Defendant notes that, following the accident, he was arrested for disorderly conduct, briefly taken to a hospital, and then interviewed by the police.   In the alternative, he contends that

he acknowledged having been involved and that the police had all of the statutorily required information.   We affirm.

¶ 2                                  I. BACKGROUND

¶ 3     Defendant was charged with multiple offenses related to a motor-vehicle accident at a busy intersection in Naperville.   The accident occurred when a motorcycle hit defendant's car, killing the rider, Jerry Puglise.   We summarize the relevant evidence from defendant's bench trial.

¶ 4     Naperville police officer David Pastrick testified that, at around 5 p.m. on the date of the accident, he was outside of his squad car at a gas station and heard the sound of vehicles colliding. He turned and saw a debris field in the air over a nearby intersection.   About five seconds later, defendant drove his car near where Pastrick was stopped and said, "it's a blue car, they caused it, they went that way."   Pastrick asked if defendant was involved; defendant did not answer. Instead, defendant said "follow me" and drove off.   Pastrick followed defendant and a blue Honda into a strip mall.   Defendant shouted that the blue Honda was "the car."   As defendant turned into the strip mall, Pastrick saw that the rear quarter panel of the passenger side of defendant's car was damaged.

¶ 5     Pastrick got out of his squad car and saw defendant and a male passenger from the Honda shouting at each other.   Defendant accused the occupants of the Honda of pointing a gun at him. Pastrick told defendant to sit on the ground; defendant did so, but kept shouting.   He repeatedly disobeyed orders from Pastrick to stop shouting.   Defendant's behavior interfered with Pastrick's ability to question the occupants of the Honda and, after other officers arrived, defendant was placed in handcuffs for obstructing the traffic stop.   While at the strip mall, defendant told an officer that he thought "something" hit him at the accident scene.   A search of defendant's car uncovered a baggie containing several grams of cannabis.

¶ 6    From witnesses who observed the accident, as well as from the visible damage to defendant's vehicle, officers soon learned that defendant had been involved in a collision with a motorcycle at the intersection and that Puglise had died.   Pastrick then transported defendant to a hospital to collect blood and urine samples.

¶ 7    At the hospital, Pastrick removed defendant's handcuffs and told defendant that he was not in custody.   Pastrick issued defendant a citation for the accident and informed him that the motorcyclist had died.   Defendant said that it was the blue car's fault and that he had thought the coast was clear.   A nurse attended to neck and back injuries defendant sustained during the collision, and defendant was transported to an interview room at the Naperville police department. Pastrick testified that they left for the police station sometime between 9 and 10 p.m.

¶ 8    The tape of defendant's interview with the police was admitted into evidence.   The interview began at around 9:33 p.m. and lasted approximately an hour.   Throughout the interview, defendant maintained that he did not know that he had been in an accident and that he did not see Puglise or his motorcycle before or after the accident.   According to defendant, he was following "the blue car" through Naperville.   Defendant and the blue car had been involved in an earlier traffic incident and he believed that someone in the car had pointed a gun at him.   When they arrived at the intersection, defendant saw Pastrick and decided to get the officer's attention to report the blue car and the gun.   Defendant thought that it was "clear" for him to turn left, from the right-most lane, around and in front of a white van.   Defendant repeatedly stated that he did not see Puglise's motorcycle before the accident and that he did not know that the motorcycle struck his car.   Defendant insisted that he thought he had hit "a big rock *** or the curb or something" in the middle of the intersection.   At one point defendant stated, "and then, boom *he* hit me" (emphasis added), but defendant later said that this was a figure of speech and he continued to

insist that he did not know that he had been in a motor-vehicle accident before he left the scene. According to defendant, he learned of the motorcycle only after he was arrested at the strip mall.

¶ 9    Witnesses to the accident testified that they saw Puglise's motorcycle hit defendant's car. One witness said that, after the accident, defendant briefly stopped his car in the intersection and then drove away.

¶ 10    The trial court found defendant guilty of all charges.   With respect to the failure-to-report charge, the court found that, in light of the extensive damage to defendant's car and defendant's statements to the police, defendant knew that he had been involved in a serious motor-vehicle accident before he left the scene.   The court further found that defendant made no attempt to stop and provide information or assistance, as required by section 11-401(a) of the Illinois Vehicle Code (625 ILCS 5/11-401(a) (West 2012)), and that defendant made no attempt to report the accident or his involvement in the accident within 30 minutes, as required by section 11-401(b) (625 ILCS 5/11-401(b) (West 2012)).   The court found that defendant was not relieved of his obligation to report the accident even though the police might have obtained information through their own investigation.   In addition to his sentences for aggravated DUI and disorderly conduct, defendant was sentenced to a four-year term of incarceration for aggravated failure to report the accident.   Defendant timely appealed.

¶ 11                                    II. ANALYSIS

¶ 12    Defendant concedes that he committed the Class 4 felony of failing to immediately stop at the scene, but he argues that the evidence was insufficient to prove a Class 1 felony, because he was physically unable to report the accident at a police station within 30 minutes, he admitted to having been involved when he was transported to the police station, and the police had all of the statutorily required information.

¶ 13    A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  *People v. Collins*, 106 Ill. 2d 237, 261 (1985).   In reviewing a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "   (Emphasis in original.)   *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).   This standard applies regardless of whether the evidence is direct or circumstantial; circumstantial evidence meeting this standard is sufficient to sustain a criminal conviction. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 14    Section 11-401(a) provides:

> "The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11-403 have been fulfilled. [(Section 11-403 states that a motorist involved in an accident has a duty to provide information and render aid if necessary.)]   Every such stop shall be made without obstructing traffic more than is necessary."   625 ILCS 5/11-401(a) (West 2012).

Failure to immediately stop under section 11-401(a) is a Class 4 felony, punishable by one to three years in prison.   625 ILCS 5/11-401(c) (West 2012); 730 ILCS 5/5-4.5-45(a) (West 2012).

¶ 15    Section 11-401(b) provides:

> "Any person who has failed to stop or to comply with the requirements of paragraph (a) shall, as soon as possible but in no case later than one-half hour after such motor vehicle accident, or, if hospitalized and incapacitated from reporting at any time during such

period, as soon as possible but in no case later than one-half hour after being discharged from the hospital, report the place of the accident, the date, the approximate time, the driver's name and address, the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such accident occurred. No report made as required under this paragraph shall be used, directly or indirectly, as a basis for the prosecution of any violation of paragraph (a)." 625 ILCS 5/11-401(b) (West 2012).

¶ 16 Failure to report an accident in accordance with section 11-401(b) is a Class 2 felony punishable by three to seven years in prison. 625 ILCS 5/11-401(d) (West 2012); 730 ILCS 5/5-4.5-35(a) (West 2012). If the accident results in a death, however, the offense is considered aggravated and enhanced to a Class 1 felony, punishable by 4 to 15 years in prison. 625 ILCS 5/11-401(d) (West 2012); 730 ILCS 5/5-4.5-30(a) (West 2012).

¶ 17 Defendant's arguments focus on the construction and application of section 11-401 of the Vehicle Code. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Cordell*, 223 Ill. 2d 380, 389 (2006). To discover the intent of the legislature, the court must consider the language of the statute, the purpose of the legislation, and the reason for its enactment. *People v. Kerger*, 191 Ill. App. 3d 405, 409 (1989). Although criminal statutes must be strictly construed in favor of the defendant, they also must not be so rigidly construed as to defeat the intent of the legislature. *Id.*

¶ 18 Here, the statute's purpose is to inform the police and those who have been injured by a hit-and-run driver of the driver's identity. See *People v. Young*, 92 Ill. 2d 236, 240 (1982). "This is accomplished by encouraging such drivers to take advantage of a second chance to come forward and reveal their identity." *Id*. "The statute should be construed to afford maximum

encouragement to those contacted by the police to be forthright rather than to stonewall or attempt to elude the police." *Id.*

¶ 19    Initially, defendant argues that the State's evidence failed to show that he "knew" that he had been involved in a motor-vehicle accident.   At oral argument, defendant stressed that he "reasonably believed" that he had hit a rock or a curb, as he told the police during the interview. The trial court rejected this argument, and rightly so.   The Criminal Code of 1961 states that "[k]nowledge of a material fact includes awareness of the substantial probability that the fact exists."   720 ILCS 5/4-5(a) (West 2010).   A photograph of defendant's car shows substantial damage to the passenger-side rear quarter panel.   Given the amount of damage to defendant's car, and the fact that the accident occurred in broad daylight in the middle of a busy intersection, it was reasonable for the trial court to disbelieve defendant's self-serving statement that he was not aware that he had been involved in a motor-vehicle accident.   See *People v. Whiting*, 365 Ill. App. 3d 402, 416 (2006) (stating that the trier of fact is free to reject a criminal defendant's self-serving statements).

¶ 20    Defendant's principal contention is that the evidence was insufficient to prove the Class 1 version of failure to report, because he was "physically incapable" of making the required report at a police station within 30 minutes, as the police were detaining him at the strip mall.

¶ 21    In making this argument, defendant first relies on section 4-1 of the Criminal Code (720 ILCS 5/4-1 (West 2010)), which defines a voluntary act.   That section states that "[a] material element of every offense is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and which he is physically capable of performing."   *Id.* However, section 4-1 generally applies in cases in which it is alleged that a defendant's commission of a crime was the result of an involuntary act.   See, *e.g.*, *People v. Grant*, 71 Ill. 2d

551, 558-59 (1978) (finding that defendant was not criminally responsible for striking a police officer while in the throes of an epileptic seizure). Defendant has not directed us to a case in which a defendant's inability to comply with a statutory duty was excused when the defendant's own voluntary acts led to the failure to comply. Nor does section 11-401(b) provide for any such excuse for the failure to comply, other than noting that, where a defendant is hospitalized and incapacitated, he or she must report the accident within 30 minutes after leaving the hospital.

¶ 22   In any event, we view defendant's argument as one of substantial compliance. Essentially he contends that, because he "notified" the police that an accident occurred within 30 minutes, but was physically prevented from doing so at a police station, the purpose of the statute should be deemed fulfilled. But as the trial court found, the evidence supported the view that defendant knew of the accident, yet made no attempt at all to report *his involvement*, even after being arrested for obstruction of justice and confronted with knowledge of the victim's death. Worse, defendant actively misled the police and attempted to place blame for the accident on the blue Honda. Thus, because defendant made no attempt to report the accident, his argument that he was physically unable to go to a police station to make a report fails. We simply cannot find substantial compliance in the absence of any attempt at compliance at all.

¶ 23   Defendant next contends that the State failed to prove that he did not make the required report within 30 minutes of leaving the hospital. Section 11-401(b) states that, if hospitalized and incapacitated from reporting at any time during the 30 minutes after the accident, the defendant must report the required information within 30 minutes after being discharged from the hospital. 625 ILCS 5/11-401(b) (West 2012). The time frame is a required element of the crime. See *People v. Patrick*, 406 Ill. App. 3d 548, 558 (2010).

¶ 24    Here, the accident occurred around 5 p.m.   Although we do not know the exact time of defendant's arrest at the strip mall, Pastrick testified that defendant left the hospital between 9 and 10 p.m.   At any rate, the timestamp on the tape of defendant's police interview indicates that the interview began around 9:33 p.m.   Assuming *arguendo* that defendant was hospitalized and incapacitated for the entire four-hour span following the accident, defendant still did not provide the information required by section 11-401(b) within half an hour of the beginning of the interview.   Instead, although defendant acknowledged that a motorcycle was involved, and although he was told that the motorcyclist had died, defendant spent the first 45 minutes of the interview denying any knowledge that a motorcycle had hit his car.   Even after an hour, when he clearly acknowledged that the motorcycle had hit his car, his statements were all in the form of denials of any knowledge of his own involvement.   Thus, there was no report of the accident as contemplated by section 11-401(b).   See *People v. Johnson*, 79 Ill. App. 2d 226, 231 (1967) (finding that the defendant's report that he did not recall hitting anyone was not a sufficient report of an accident).

¶ 25    Defendant also notes that there is no evidence that he did not make the report between the time he left the hospital and the recording of the interview.   But given that he was still denying his involvement during the taped interview, the trier of fact could have reasonably inferred that he did not previously report it.   See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009) (noting that, under the *Collins* standard, all reasonable inferences will be made in the State's favor).

¶ 26    Finally, defendant contends that the purpose of the statute was satisfied in that he acknowledged that an accident occurred and the police already had the remainder of the required information.   That argument also fails.   The requirements of sections 11-401(a) and (b) are not limited to situations where the driver initiates contact with the police.   *Young*, 92 Ill. 2d at 240.   It

is the responsibility of the driver to furnish the required information to the police, and that responsibility does not change merely because the police obtained the required information as a result of their own investigation. *People v. Snodgrass*, 103 Ill. App. 2d 166, 169-70 (1968).

¶ 27                                    III. CONCLUSION

¶ 28    The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. Accordingly, the judgment of the circuit court of Du Page County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2012); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 29    Affirmed.