**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Christopher Anthony LOWRY,**
**Appellant.**

Superior Court of Pennsylvania.

Argued June 28, 2012.

Filed Oct. 26, 2012.

Daniel J. Eichinger, Public Defender, and Suzanne M. Swan, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before OLSON, WECHT and PLATT,[*] JJ.

OPINION BY OLSON, J.

Appellant, Christopher Anthony Lowry, appeals from the judgment of sentence entered April 6, 2011, sentencing him to, *inter alia,* 14 to 36 months' incarceration, followed by four years' consecutive probation, for convictions of accidents involving death or personal injury[1] and summary offenses of operating a motor vehicle without financial responsibility[2] and careless driving.[3] For the following reasons, we affirm.

The trial court summarized the factual and procedural background of this matter as follows:

Ernest Stevens testified that he was at a gas station on Route 51 in Jefferson Borough on October 1, 2009 when he observed a white male in a red vehicle pull out of the gas station towards Route 51 and make a left turn across two lanes onto the highway. Appellant stipulated that he was the driver of the red vehicle. Stevens testified that Appellant crossed the path of oncoming traffic and that Stevens was surprised that Appellant did not hit either of the two oncoming cars. Stevens noted that Appellant's tires spun and smoke came out of the front tires when Appellant accelerated out of the gas station onto the highway. Stevens indicated that the wheels of both oncoming cars "locked up," and one of them, an SUV, fishtailed, went sideways and spun out of control, striking a car traveling in the opposite direction. Stevens said debris flew everywhere and the collision was very loud.

Joseph Wanielista was the driver of one of the vehicles in the two lanes of traffic crossed by Appellant when executing his left turn. He testified that Appellant pulled out in front of his car and the SUV in the other lane, and did not give him much room to stop. Wanielista immediately hit his brakes and managed to both avoid getting hit and maintain control of his vehicle.

Kevin Poindexter, the driver of the SUV, was not so fortunate. He testified that when Appellant pulled out of the gas station in front of him, Poindexter slowed down and turned his wheel to the left to avoid going over a curb and into the gas station. This action caused his wheels to lock and his car to slide across two lanes and strike a car traveling in the opposite direction of Route 51.

Dr. Todd Luckasevic testified that the individual struck by Poindexter's SUV,

Retired Senior Judge assigned to the Superior Court.

**1.** 75 Pa.C.S.A. § 3742.

**2.** 75 Pa.C.S.A. § 1786(f).

**3.** 75 Pa.C.S.A. § 3714.

Bradley Child, died as a result of the injuries he sustained in the motor vehicle accident.

Trial Court Opinion, 10/5/2011, at 3–4.

From January 21–24, 2011, Appellant underwent a jury trial, at the conclusion of which he was found guilty of accidents involving death or personal injury. The trial court, sitting as a magistrate, subsequently found Appellant guilty of the summary offenses of operating a motor vehicle without financial responsibility and careless driving. The trial court sentenced Appellant on April 6, 2011.

This timely appeal followed.

Appellant raises three issues for appeal:

Whether the evidence was sufficient to convict [Appellant] on the charge of [a]ccidents [i]nvolving [d]eath or [p]ersonal [i]njury, 75 Pa.C.S.A. § 3742(a)?

Whether the [t]rial [c]ourt abused its discretion in denying [Appellant's] [m]otion for a [v]iew by [the j]ury?

Whether the [t]rial [c]ourt abused its discretion in admitting three color photographs of [the victim] in the hospital, specifically Commonwealth Exhibits 17, 18, and 19?

Appellant's Brief at 5.[4]

Appellant's first issue on appeal challenges the sufficiency of the evidence for his conviction of accidents involving death or personal injury, 75 Pa.C.S.A. § 3742, on two bases. Appellant's first contention is that the Commonwealth failed to establish that Appellant was "involved" in an accident. Appellant's Brief at 23–31. Next, Appellant claims that the Commonwealth failed to sufficiently establish that Appellant "knew or should have known" that he was involved in an accident. *Id.* at 32–44.

We begin by considering Appellant's challenge to the determination that he was "involved" in the accident.

Pursuant to Section 3742:

[t]he driver of any vehicle **involved** in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S.A. § 3742(a) (emphasis added).[5]

In this matter, Appellant concedes that he did not stop, did not render aid, and did not return to the scene of the accident on October 1, 2009. Appellant's Brief at 25. Appellant, however, points out that his car did not strike anything within the accident—the physical portions of the accident occurred between two other cars, which were affected by Appellant's presence, but not physically struck in any way by Appellant's vehicle. *Id.* Appellant argues that because the Commonwealth did not present any evidence that he "physically impacted" anything in the accident, he was not "involved" in the accident, as defined by Section 3742. *Id.* at 23–31. Consequently, Appellant asks us to vacate his judgment of sentence for his conviction under Section 3742. *Id.*

The Pennsylvania Motor Vehicle Code does not define what it means to be "involved" in an accident, and the issue presented by Appellant is one of first impression within Pennsylvania. Specifically, Appellant's claim asks us to determine

4. The requirements of Pennsylvania Rule of Appellate Procedure 1925 have been satisfied in this matter.

5. Section 3742 is commonly considered to be one of Pennsylvania's "hit-and-run" statutes.

whether the crime set forth at Section 3742 requires a defendant to physically impact a vehicle, other object, or person for an individual to be "involved" in an accident. Therefore, we are compelled to resolve an imbedded issue of statutory interpretation.

Issues of statutory interpretation present pure questions of law. As such, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Leidig*, 598 Pa. 211, 956 A.2d 399, 403 (2008); *In re Wilson*, 879 A.2d 199, 214 (Pa.Super.2005) *(en banc)*. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). Additionally, "[w]ords and phrases [of a statute] shall be construed according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903. Statutes should not be so narrowly and technically construed, so as to reach absurd results. 1 Pa.C.S.A. § 1922.

In this matter, Appellant relies upon previous cases applying Section 3742, and notes that "[e]very published case dealing with Section 3742 involves the driver striking a vehicle, structure, property, or person." Appellant's Brief at 29–30. According to Appellant, although he may have caused the accident, it was improper to find that he was "involved" in the accident because he did not physically impact anything. *Id.*

The Commonwealth disagrees with Appellant's interpretation, arguing that to require a driver to actually strike something for that driver to be "involved" in an accident pursuant to Section 3742 would lead to absurd results, not intended by the General Assembly. Commonwealth's Brief at 7–8. In support of its argument, the Commonwealth cites to similar cases from other state court jurisdictions that, while not binding on this Court, provide persuasive authority for our consideration.

For example, in *People v. Kerger*, 191 Ill.App.3d 405, 138 Ill.Dec. 806, 548 N.E.2d 36, 37 (1989), the defendant driver did not strike, but came so close to striking· a pedestrian that, as a result, the pedestrian fell and was thereupon hit head-on by another vehicle. The defendant driver left the scene prior to fulfilling the requirements of Illinois's ·analogous hit-and-run statute, which contains language substantially similar to Pennsylvania's Section 3742. *Id.* 138 Ill.Dec. 806, 548 N.E.2d at 38. The pedestrian died because of the accident. *Id.* The defendant driver was tried and convicted under the Illinois statute. *Id.* On appeal, the defendant in *Kerger* argued "that because there was no physical contact between her vehicle and the pedestrian nor 'substantial implication or connection' between her vehicle and the pedestrian who was run over by another vehicle, she was not 'involved' in a motor vehicle accident and had no responsibilities under" the Illinois statute. *Id.*

The Illinois court disagreed, noting that the purpose of the hit-and-run statute "is to inform those who have been injured or damaged by another driver or the proper authorities if necessary of that driver's identity." *Id.* Considering that purpose, the Illinois court went on to note that it could think of numerous situations where the driver of a vehicle would be involved in an accident and yet not have contact with another vehicle or pedestrian. *Id.* 138 Ill. Dec. 806, 548 N.E.2d at 39. As an example, the Illinois court cited a situation in which a first driver commits a driving error where a second driver's evasive maneuvers avoids collision with the first driver, but still results in injury or damage to the second driver. The Illinois court clari-

fied that under that situation, the first driver is certainly "involved" in an accident. *Id.*

Further supporting its determination, the Illinois court referred to an advisory opinion from its Attorney General, opining that the word "involved" in a motor vehicle accident does not require some form of physical contact, but means "implicated in an accident or connected with the accident in a substantial manner." *Id.* Though not binding, the Illinois court found the Attorney' General's definition to be well reasoned and persuasive. *Id.* The Illinois court explained that, such situations have to be evaluated based upon their particular facts, but to hold otherwise would permit drivers who do not make physical contact with anything, but are clearly involved in an motor vehicle accident, to escape detection and circumvent the purpose behind the hit-and-run statute. *Id.*

Similarly, in *People v. Bammes*, 265 Cal. App.2d 626, 631, 71 Cal.Rptr. 415 (1968), a California appellate court considered a situation wherein the defendant turned her vehicle into the path of an oncoming station wagon. The station wagon swerved and successfully missed the defendant's vehicle, but, as a result, it collided with a logging truck, killing five of the occupants within the station wagon. *Id.* at 629–630, 71 Cal.Rptr. 415. The driver of the initial car left the scene and was later prosecuted under California's analogous hit-and-run statute. *Id.*

On appeal, the California court held that, though the defendant's vehicle made no contact with anything, "it is clear that her action in turning into the intersection in front of the oncoming station wagon was an efficient cause of the latter's colliding with the truck and that therefore defendant was 'involved' in the accident." *Id.* at 631, 71 Cal.Rptr. 415. Furthermore, the court went on to note that to be "involved"

in an accident means to be connected with the accident in a logical or natural manner. *Id.*

We agree with the interpretation of both sister states. Indeed, the General Assembly's intent in passing Section 3742 is identical to that contemplated by the Illinois and California statutes. *See Commonwealth v. Wisneski*, 612 Pa. 91, 29 A.3d 1150, 1153 (2011) (observing that the General Assembly's clear purpose in passing Section 3742 was to require every driver involved in every accident to stop and comply with the duties set forth therein— including providing information and rendering aid). To interpret Section 3742 to require some form of physical contact would permit defendants to circumvent that intent. For example, under Appellant's interpretation of Section 3742, a driver who intentionally runs someone off the road, yet does not contact the other vehicle, and then flees the scene, would not be guilty of a Section 3742 violation (although he may be guilty of other offenses). *Id.* Certainly, such an absurd result was not the General Assembly's intent when it passed Section 3742.

■ Consequently, based on our review of pertinent authority in this Commonwealth and in our sister states, we conclude that the term, "involved in an accident," in Section 3742 of the Motor Vehicle Code does not require physical contact with a vehicle, other object, or person during the course of an accident. Therefore, under the totality of the circumstances, we conclude that Appellant was "involved in an accident" for purposes of Section 3742 and that his argument to the contrary fails.

Appellant attempts to bolster his argument that the term "involved" contemplates some form of physical impact on the part of the defendant by citing to the

Pennsylvania Supreme Court's holding in *Commonwealth v. Wisneski*, 612 Pa. 91, 29 A.3d 1150 (2011), and by comparing Section 3742 to a similar motor vehicle statute, 75 Pa.C.S.A. § 3742.1, entitled "accidents involving death or personal injury while not properly licensed." *Id.* at 26–28 & 30–31. Both comparisons are distinguishable.

Specifically, in *Wisneski* our Supreme Court interpreted the term "resulting in injury" within Section 3742. *Wisneski*, 29 A.3d at 1155. In that matter, a bicyclist collided with a construction barrel and fell onto the road. *Id.* at 1151. At least two vehicles, one driven by the defendant, struck the bicyclist and his injuries were fatal. *Id.* The defendant did not stop at the scene or alert police. *Id.* As a result, the Commonwealth charged him with crimes under Section 3742. *Id.*

Prior to trial, the Commonwealth stipulated that it could not prove that the victim was still alive when the defendant's vehicle hit him—the victim could have been killed by the other vehicle. *Id.* Relying upon the "resulting in injury" language within Section 3742, the defendant filed a *habeas corpus* petition, arguing that the Commonwealth could not fulfill its burden to establish that he caused the victim any injury, when the victim could have already been dead. *Id.* The trial court accepted the defendant's interpretation, granted his petition, and dismissed the case. *Id.* On appeal, our Court affirmed the trial court's decision. *Id.*

The Commonwealth then appealed to the Supreme Court, which reversed our order, holding that the term " 'resulting in injury' must include causing harm or damage to the body of a human, whether deceased or not." *Id.* at 1155. To find otherwise, the Supreme Court explained, "would defeat the legislative scheme, and would be offensive to our notions of the value of the person." *Id.*

Within its holding, the Supreme Court in *Wisneski* considered whether the defendant had been "involved in an accident." *Id.* at 1153. There, the Supreme Court explained that "[i]n the relevant realm of vehicle law, the breadth of the term [accident] encompasses any untoward and unintended contact between a vehicle and something else." *Id.* Consequently, the Court determined that when the defendant's car struck the bicyclist, the defendant was clearly "involved in an accident," regardless of whether the cyclists was alive at the moment of impact. *Id.*

Appellant in this matter relies upon the Supreme Court's explanation in *Wisneski* to argue that, because on October 1, 2009, his vehicle did not experience any "untoward and unintended contact," he could not have been "involved" in an accident. Appellant's Brief at 28. The Supreme Court in *Wisneski*, however, was not defining the bounds of what it means to be "involved" in an accident, but was clarifying what the General Assembly meant by the term "accident." No one in this matter denies that there was an accident involving unintended contact between two vehicles on October 1, 2009. Contrary to Appellant's argument, however, nothing about the Supreme Court's decision in *Wisneski* limits the scope of the terms "involved in an accident" to those who actually experience the unintended contact. Therefore, Appellant's argument in this regard is unavailing.

Also in *Wisneski*, the Supreme Court explained that the obligation to stop at the scene of an accident set forth in Section 3742 is not triggered by causation. *Wisneski*, 29 A.3d at 1153. Determining who caused the accident, the Court explained, is irrelevant to the hit-and-run

statute, which simply requires that a person be "involved" in an accident. *Id.*

Appellant relies upon the Supreme Court's explanation of causation in *Wisneski* to argue that, just because Appellant may have caused the accident, he did not have to stop at the accident unless he experienced some resulting contact. Appellant's Brief at 28. Once again, Appellant's reliance is misplaced.

Rather, the Supreme Court's causation discussion in *Wisneski* expanded the statutory reach of Section 3742 by clarifying that, even though one may not cause an accident (such as the driver that hit the cyclist in that matter), the obligation to stop is still triggered if one is **involved** in an accident. *Wisneski,* 29 A.3d at 1153. The Supreme Court, therefore, widened the scope of those who may be subjected to prosecution under Section 3742 to all those individuals involved in an accident, not simply those who caused an accident. *Id.* Contrary to Appellant's assertion, nothing about the Supreme Court's discussion of causation in *Wisneski* limited the definition of those "involved" in an accident to only those that experienced physical contact. *Id.* Rather, we hold that if an individual, such as Appellant, causes an accident, then that person is sufficiently connected to the accident such that the individual may be considered to be "involved" in the event within the meaning of Section 3742, even where that individual makes no physical contact with another vehicle, object, or person. We believe that our holding is consistent with the Supreme Court's analysis in *Wisneski* and the General Assembly's intention in passing Section 3742. Consequently, Appellant's causation argument is also unavailing.

Appellant also compares the language of Section 3742 to that of Section 3742.1, entitled "accidents involving death or personal injury while not properly licensed."

Appellant's Brief at 30–31. Pursuant to Section 3742.1:

> A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for the type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and **caused** an accident resulting in injury or death of any person.

75 Pa.C.S.A. § 3742.1(a) (emphasis added).

According to Appellant, the "General Assembly's use of the word 'caused' instead of the word 'involved' [within Section 3742.1] indicates that it is aware of, and fully understands, the difference between the two verbs." Appellant's Brief at 31. We agree. However, contrary to Appellant's interpretation, we do not believe that the General Assembly's use of the term "caused" within Section 3742.1 limits the definition of the term "involved" within Section 3742. To the contrary, we believe that, by using the more limited term "caused" within Section 3742.1, the General Assembly restricted application of that statute to those individuals who "caused" an accident. Comparatively, by using the broader term "involved" within Section 3742, the General Assembly intended that statute to apply to everyone with a direct nexus to the accident, not just the causing party. *Wisneski,* 29 A.3d at 1153. Therefore, contrary to Appellant's assertion, the General Assembly's use of the term "caused" within Section 3742.1 actually supports our broader interpretation of the term "involved" within Section 3742.

In summary, we reject Appellant's assertion that to be "involved in an accident" for purposes of Section 3742, one must strike someone or something. To the contrary, because the evidence overwhelmingly establishes that Appellant was implicat-

ed or connected with the accident here, his challenge to the sufficiency of the evidence to support his conviction under Section 3742 is without merit.

Appellant's second challenge to the sufficiency of the evidence argues that the evidence failed to establish that he "knew or should have known" that he was involved in a motor vehicle accident. Appellant's Brief at 32–44. Unlike the issue above, this issue presents a more traditional challenge to the sufficiency of the evidence. We therefore set forth the applicable standard of review:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by a fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Muniz,* 5 A.3d 345, 348 (Pa.Super.2010) (internal citations and quotations omitted), *appeal denied,* 610 Pa. 584, 19 A.3d 1050 (2011).

■ Previous decisions from our Court interpreting Section 3742 clearly establish that a conviction under that section requires the Commonwealth to establish that the "driver knew or should have known" that he was involved in an accident involving personal injury or death. *See Commonwealth v. Kinney,* 863 A.2d 581, 585–586 (Pa.Super.2004), *citing Commonwealth v. Woosnam,* 819 A.2d 1198, 1206 (Pa.Super.2003). Reliant upon that precedent, Appellant in this matter cites his own testimony and excerpts from other testimony presented at trial, to argue that the evidence was insufficient to establish that he knew or should have known about the accident on October 1, 2009. Appellant's Brief at 32–44. While Appellant acknowledges that he pulled into traffic and was nearly involved in an accident, he argues that he personally avoided involvement in an accident, and drove off, oblivious to the accident between the other vehicles that resulted from the evasive maneuvers initiated because of his actions. *Id.* Appellant also asserts that he traveled around a bend and merged with other rush hour traffic before he had the opportunity to view the accident behind him. *Id.* Appellant claims not to have heard or seen anything suggesting that he caused a collision that morning. *Id.* Therefore, Appellant argues that the Commonwealth failed to establish that he "knew of should have known" about the accident, sufficient to trigger the obligations set forth in Section 3742.

We, however, disagree with Appellant's assessment of the evidence presented in this matter. While Appellant's theory that he knew nothing about the accident was one presented to the jury, and one that the jury was entitled to accept, the jury reject-

ed that theory and instead adopted the Commonwealth's version of the events that day.[6] Indeed, the Commonwealth presented evidence that on October 1, 2009, Appellant pulled into traffic and very nearly collided with two oncoming vehicles. Appellant's vehicle was forced to move so quickly that his tires spun and emitted smoke. The brakes of the two oncoming vehicles then locked-up, and one of the oncoming vehicles, an SUV, fishtailed and spun out of control in an attempt to avoid Appellant. That evasive maneuver caused the SUV to strike a car traveling in the opposite direction, causing a very loud collision, which threw debris everywhere. Such evidence, especially when viewed in the light most favorable to the Commonwealth, pursuant to the applicable standard of review, is sufficient to establish that Appellant knew or should have known about the accident that he caused. Consequently, Appellant's challenge to the sufficiency of the evidence in this regard is without merit.

■ Appellant's second issue on appeal challenges the trial court's order denying his motion for a view by the jury. Appellant's Brief at 45–51. Pursuant Pennsylvania Rule of Criminal Procedure 643(A), "[t]he trial judge may in the judge's discretion order a view by the jury." Pa. R.Crim.P. 643(A). "Absent an abuse of discretion, the denial of a request for a jury view will not be overturned." *Commonwealth v. McNeil,* 545 Pa. 42, 679 A.2d 1253, 1256 (1996), *superseded by statute on other grounds as stated in Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997 (2007). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unrea-

sonableness, or misapplication of law." *Commonwealth v. Hoover,* 16 A.3d 1148, 1150 (Pa.Super.2011).

■ Appellant argues that the trial court's denial of his motion to view the site of the accident was an abuse of discretion because, according to Appellant, understanding the characteristics of the accident scene was an important component to his defense. Appellant's Brief at 45–51. Specifically, within his defense, Appellant asserted that that he did not realize that the accident on October 1, 2009 had occurred because, as he continued to drive, Appellant merged into busy traffic and traveled around a bend. *Id.* Appellant argues that he moved to have the jury view the accident site to provide the jury with sufficient understanding of how such claims were possible. *Id.* The trial court's denial of that motion, Appellant argues, was an abuse of discretion, entitling him to a new trial. *Id.* at 51.

We find no abuse of discretion in the trial court's denial. Rather, within the trial of this matter the jury was shown photographs and a video tape of the accident site, all presented to provide the jury with a proper understanding of the scene of the accident. Indeed, the defense created and offered the video tape of the site. Furthermore, with the aid of the photographs, several witnesses consistently described the accident site as well as the events that transpired. Considering such evidence, the trial court determined that a view of the accident site was unnecessary and that the benefit would be minimal. Trial Court Opinion, 10/5/2011, at 5. Such a determination was within the trial court's

---

**6.** That the jury chose not to believe Appellant's testimony is an issue of credibility left purely to the jury's discretion and not subject to our appellate review. As we have explained, it is not the function of an appellate court reviewing a challenge to the sufficiency of the evidence to re-assess the credibility of the witnesses' testimony. *Commonwealth v. Wilson,* 825 A.2d 710, 713–714 (Pa.Super.2003).

discretion. Appellant's challenge to the trial court's denial of his motion for a jury view is without merit.

 Appellant's final issue on appeal challenges the trial court's admission of photographs of the victim. Appellant's Brief at 52–55. As our Supreme Court has explained:

> [t]he admissibility of photographs falls within the discretion of the trial court and only an abuse of that discretion will constitute reversible error. *See Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385, 405 (2003) *(citing Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711, 726 (1998), *cert. denied,* 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999)). The test for determining whether photographs are admissible involves a two-step analysis. "First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury." *Baez,* 720 A.2d at 726 *(citing Commonwealth v. Marshall,* 537 Pa. 336, 643 A.2d 1070, 1075 (1994)).

*Commonwealth v. Malloy,* 579 Pa. 425, 856 A.2d 767, 776 (2004) (parallel citations omitted).

 In this matter, the Commonwealth proffered photographs of the victim, taken while in the hospital and before he ultimately died. The trial court admitted a limited number of those photographs, over Appellant's objection. On appeal, Appellant argues that admission of the photographs was an abuse of discretion because, according to Appellant, the photographs are inflammatory and irrelevant. Appellant's Brief at 54. Appellant argues that any photos of a now deceased victim in the hospital are naturally inflammatory and likely to invoke the jury's compassion and sympathy. *Id.* at 55. Furthermore, Appellant argues that he did not dispute that the victim in this matter was killed as a result of the accident. *Id.* Therefore, Appellant believes that the photos were irrelevant and unnecessary. *Id.* at 54.

We find no abuse of discretion in the trial court's admission of the photographs. Indeed, the trial court admitted only a limited number of photos proffered by the Commonwealth, and only those photos that it believed were representative of the various injuries suffered by the victim. Trial Court Opinion, 10/5/2011, at 6. Furthermore, the trial court acknowledged that the photographs are "by nature not pleasant but also not unduly graphic." *Id.* The trial court did not deem the photos inflammatory and, in any event, determined that their evidentiary value outweighed their potential inflammatory effect upon the jury. *Id.* Nothing about Appellant's argument establishes that the trial court's proper application of the above standard was biased, impartial, or manifestly unreasonable. Consequently, Appellant's appeal of the admission of the photographs is without merit.

Judgment of sentence affirmed.